**THE LAW OFFICE OF JACK FITZGERALD, PC**
JACK FITZGERALD (257370)
*jack@jackfitzgeraldlaw.com*
TREVOR M. FLYNN (253362)
*trevor@jackfitzgeraldlaw.com*
MELANIE PERSINGER (2753362)
*melanie@jackfitzgeraldlaw.com*
Hillcrest Professional Building
3636 Fourth Avenue, Suite 202
San Diego, California 92103
Phone: (619) 692-3840
Fax: (619) 362-9555

*[Other Counsel Listed on Signature Page]*

*Counsel for Plaintiff and the Class*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTA VONWILLER, on behalf of herself and all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>EQUIFAX INFORMATION SERVICES, LLC,<br><br>    Defendant. | Case No.:  **'17CV1839 CAB NLS**<br><br>CLASS ACTION<br><br>**COMPLAINT FOR VIOLATION OF THE FAIR CREDIT REPORTING ACT, CALIFORNIA CUSTOMER RECORDS ACT, AND CALIFORNIA UNFAIR COMPETITION LAW**<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Krista VonWiller ("Plaintiff"), by and through counsel, individually and on behalf of all others similarly situated, and for her Class Action Complaint against Defendant Equifax Information Services, LLC ("Equifax"), states as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff Krista VonWiller is a resident of Escondido, California. Ms. VonWiller is, and at all times relevant was, a "consumer" as that term is understood under 15 U.S.C. § 1681a(c).

2. Defendant Equifax Information Services, LLC is a limited liability company incorporated under the laws of the State of Georgia with its principal place of business located at 1550 Peachtree Street NE, Atlanta, GA, and doing business in the state of California.

3. Equifax is a "Consumer Reporting Agency" (or "CRA") as that term is defined by 15 U.S.C. § 1681a(f).

4. Equifax is also a "Consumer Reporting Agency that Compiles and Maintains Files on Consumers on a Nationwide Basis" as that term is defined under 15 U.SC. § 1681a(p).

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as this case alleges violation of federal law, specifically the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

6. This Court has supplemental jurisdiction to hear all state law claims pursuant to 28 U.S.C. § 1367.

7. Venue in this District is proper pursuant to 28 U.S.C. § 1391(b) and (c), as the Plaintiff resides within this District, a substantial portion of the events or omissions giving rise to the claim occurred in this District, and Equifax regularly conducts business in this District.

**INTRODUCTION**

8. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence,

which is essential to the continued functioning of the banking system. Congress enacted the FCRA, 15 U.S.C. §§ 1681, *et seq.*, to insure fair and accurate credit reporting, promote efficiency in the banking system, and, as most relevant to this Complaint, protect consumer privacy. The FCRA imposes duties on the CRAs to protect consumers' sensitive personal information.

9.  The FCRA protects consumers through a tightly wound set of procedural protections from the material risk of harms that otherwise follow from the compromise of a consumer's sensitive personal information. Thus, through the FCRA, Congress struck a balance between the credit industry's desire to base credit decisions on accurate information, and a consumer's substantive right to protection from damage to reputation, shame, mortification, and emotional distress that naturally follows from the compromise of a person's identity.

10. A central duty that the FCRA imposes upon CRAs is the duty to protect the consumer's privacy by guarding against inappropriate disclosure to third parties. 15 U.S.C. § 1681b codifies this duty, and permits a CRA to disclose a consumer's information only for one of a handful of exclusively defined "permissible purposes." To ensure compliance, CRAs must maintain reasonable procedures to ensure that such third party disclosures are made exclusively for permissible purposes. 15 U.S.C. § 1681e(a).

11. The FCRA defines "consumer report" broadly, as "any written, oral, or other communication of any information by a CRA bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (A) credit or insurance to be used primarily for personal, family, or household purposes; (B) employment purposes; or (C) any other purpose authorized under section 1681b of this title." 15 U.S.C. § 1681a(d).

12. The FCRA also entitles the consumer to take an active role in the protection of his or her sensitive personal information, by giving the consumer a right to request "All

information in the consumer's file at the time of the request." 15 U.S.C. § 1681g(a)(1). Through immediate review of the details of when, and for what purpose, a consumer's information has been disclosed to a third party, a consumer may better understand whether their identity has been stolen.

13.  The FCRA also entitles consumers to actively protect their privacy rights in cases of suspected identity theft. Specifically, a consumer who believes he or she has been the victim of identity theft can submit a fraud alert to a consumer reporting agency. 15 U.S.C. § 1681c-1. The consumer can either request that the fraud alert be imposed for a 90-day period, or for an extended period of seven years. 15 U.S.C. § 1681c-1(a)-(b). In the event a consumer requests "extended" protection, a consumer reporting agency must remove the consumer from any list of third parties to whom the agency sends the consumer's information to extend firm offers of credit, and keep the consumer off of any such a list for five years, unless the consumer requests otherwise. 15 U.S.C. § 1681c-1(b)(1)(B). After being notified of a fraud alert, a CRA must send notification of the alert to the consumer reporting agencies which report information on a nationwide basis. 15 U.S.C. § 1681c-1(a)(1)(B); *see* 15 U.S.C. § 1681a(p).

14.  After fraud notification, the FCRA provides the consumer additional rights to independently monitor their credit information to protect their privacy. Specifically, once notified of a consumer's fraud notification, a CRA must, within three days of the notification, provide the consumer with all of the disclosures required under 15 U.S.C. § 1681g. 15 U.S.C. § 1681c-1(a)(2), § 1681c-1(b)(2). When a consumer requests that an "extended" fraud alert be placed on their files, the consumer is entitled to request two free disclosures under 15 U.S.C. § 1681g within the 12-month period following notification of a fraud alert. 15 U.S.C. § 1681c-1(b).

15.  Thus, through immediate review of the details of when, and for what purpose, a consumer's private information has been disclosed to a third party, a consumer may better understand whether their identity has been stolen. And through semi-annual review of their consumer disclosures in the case of an "extended" alert, a consumer can periodically check

to determine whether efforts to protect their identity after potential fraud have not been successful. Thus, the FCRA presupposes that consumers subject to potential fraud should be permitted the immediate opportunity to investigate the issues themselves and ascertain the extent of any suspected fraud.

16. Plaintiff, individually and on behalf of those similarly situated, brings this action to challenge the actions of Defendant in the protection and safekeeping of the Plaintiff's and Class members' personal information.

17. Defendant failed to properly safeguard the information of Plaintiff and Class members, as required under 15 U.S.C. § 1681e(a).

18. Defendant also failed to properly safeguard the information of Plaintiff and Class members, as required by the California Customer Records Act, Cal. Civ. Code §§ 1798.80, *et seq.*

19. Additionally, Defendant's failure to properly safeguard the personal information of Plaintiff and the Class members is an unfair and unlawful business act and practice, in violation of Cal. Bus. & Prof. Code §§ 17200 *et seq.*

## FACTS

20. On July 29, 2017, Equifax discovered that one or more of its servers, which contained Plaintiff's sensitive personal information including Plaintiff's name, full Social Security number, birth date, address, and, upon belief, her driver's license numbers and possibly one or more of her credit cards, had been breached or "hacked" by a still unknown third party.

21. Upon belief, when Equifax discovered this breach, Equifax immediately began an internal investigation and contracted with an unidentified third-party cybersecurity firm to conduct a comprehensive forensic review to determine the scope of the hack including identifying the specific data impacted. As of the filing of this Complaint, that investigation remains ongoing and has not yet been completed despite over six weeks elapsing since the initial breach.

22. On September 7, 2017, major news outlets began reporting about the July 29, 2017 incident. (*See, e.g.*, *Massive Equifax Data Breach Could Impact Half of the U.S. Population*, Alyssa Newcomb, NBCNEWS, Sept. 7, 2018, available at: https://www.nbcnews.com/tech/security/massive-equifax-data-breach-could-impact-half-u-s-population-n799686).

23. These news stories were the first time Class members had been informed that their information secured by Equifax had been compromised six (6) weeks earlier, and they now live in constant fear that their information has been compromised.

24. Equifax's decision to wait six (6) weeks after the alleged data breach before informing all consumers of the same was willful, or at least negligent. Further, by depriving plaintiff and Class members of information about the breach in a timely manner, Equifax subjected each consumer to a concrete informational injury, as these consumers were deprived of their opportunity to meaningfully consider and address issues related to the potential fraud, as well as to avail themselves of the remedies available under the FCRA to prevent further dissemination of their private information.

25. Equifax has been subject to numerous allegations regarding data breaches in the past. (*See, e.g.*, *A Brief History of Equifax Security Fails,* Thomas Fox-Brewster, FORBES, Sept. 8, 2017, available at: https://www.forbes.com/sites/thomasbrewster/2017/09/08/equifax-data-breach-history/#63dc4270677c). In light of Equifax's continual failure to ensure the integrity of its file storage systems in light of known defects to the same, Equifax willfully, or at least negligently, failed to enact reasonable procedures to ensure that consumer reports would only be provided for a permissible purpose. By failing to establish reasonable procedures to safeguard individual consumer's private information, Equifax deprived millions of consumers from a benefit conferred on them by Congress, which, now lost, cannot be reclaimed.

26. The harm to Plaintiff and Class members was complete at the time the unauthorized breaches occurred, as the unauthorized disclosure and dissemination of private credit information causes harm in and of itself.

## CLASS ACTION ALLEGATIONS

27. Plaintiff brings this action on behalf of a nationwide class of all similarly situated individuals (the "Class"), defined as: "all persons in the United States for whom Equifax stored private, personal information that was released as a result of the data breach."

28. Excluded from the Class are: (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Class; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

29. Plaintiff also brings this action on behalf of a subclass of all similarly situated individuals in California ("Subclass"), defined as: "all persons in California for whom Equifax stored private personal information that was released as a result of the data breach."

30. Excluded from the Subclass are: (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Class; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

31. At this time the Plaintiff does not know the size of the Class because the information is exclusively in the possession of the Defendant, but Plaintiff believes that the potential number of Class members are so numerous that joinder would be impracticable. It

has been reported that the Class could consist of over 100 million people. The number of Class members can be determined through discovery.

32. All members of the Class have been subject to and affected by a uniform course of conduct in that all Class members' personal information was compromised during the data breach. These are questions of law and fact common to the proposed Class that predominate over any individual questions. The questions common to all Class members include, but are not limited to:

    a. Whether Defendant had implemented reasonable procedures to ensure that all third parties who accessed Plaintiffs' and Class members' private credit information did so for a permissible purpose;

    b. Whether Defendant failed to notify consumers of the data breach within a reasonable period of time;

    c. Whether Defendant failed to block the reporting of information on consumers' files that were the result of the data breach;

    d. Whether Plaintiffs and Class members suffered damages as a result of Defendant's failure to comply with FCRA based on the improper dissemination of their credit information as a result of the data breach;

    e. Whether Plaintiff and Class members are entitled to statutory damages; and

    f. Whether Plaintiff and Class members are entitled to punitive damages.

33. Plaintiff's claims are typical of the class, as Plaintiff's personal information was compromised during the data breach. All claims are based on the same legal and factual issues.

34. Plaintiff will adequately represent the interests of the class and does not have an adverse interest to the class. If individual class members prosecuted separate actions it may create a risk of inconsistent or varying judgments that would establish incompatible standards of conduct. A class action is the superior method for the quick and efficient adjudication of this controversy. Plaintiff's counsel has experience litigating consumer class actions.

35. Further, under Fed. R. Civ. Pro. 23(b)(2), Defendant acted on grounds generally applicable to the proposed Class, making appropriate final declaratory and injunctive relief with respect to the proposed Class as a whole.

## CAUSES OF ACTION

### COUNT ONE

### VIOLATION OF THE FAIR CREDIT REPORTING ACT,

### 15 U.S.C. §§ 1681, *ET SEQ.*

### (By the Nationwide Class)

36. Plaintiff restates the allegations above as if fully set forth herein.

37. Based upon Equifax's failure to have reasonable procedures in place, Plaintiff's private information was compromised, and neither Plaintiff nor the Class members received notice of the data breach, except through the media approximately six (6) weeks after the breach occurred.

38. As a result of each and every willful violation of the FCRA, Plaintiff and Class members are entitled to: actual damages, pursuant to 15 U.S.C. § 1681n(a)(1); statutory damages, pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages, as this Court may allow, pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1681n(a)(3).

39. As a result of each and every negligent non-compliance of the FCRA, Plaintiff and Class members are also entitled to actual damages, pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2) from Defendant.

### COUNT TWO

### VIOLATION OF THE CALIFORNIA CUSTOMER RECORDS ACT,

### CAL. CIV. CODE §§ 1798.80, *ET SEQ.*

### (By the California Subclass)

40. Plaintiff restates the allegations above as if fully set forth herein.

41. "[T]o ensure that personal information about California residents is protected," the California legislature enacted Civil Code § 1798.81.5, which requires that any business

that "owns or licenses personal information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure."

42. By failing to implement reasonable measures to protect the California Subclass's personal information, Defendant violated Civil Code § 1798.81.5.

43. In addition, by failing to promptly notify all affected Equifax customers that their personal information had been acquired (or was reasonably believed to have been acquired) by unauthorized persons in the data breach, Defendant violated Civil Code § 1798.82.

44. As a direct or proximate result of Defendant's violations of Civil Code §§ 1798.81.5 and 1798.82, Plaintiff and Class members were (and continue to be) injured and have suffered (and will continue to suffer) the damages as described above.

45. By violating Civil Code §§ 1798.81.5 and 1798.82, Defendant "may be enjoined" under Civil Code Section 1798.84(e).

46. Defendant's violations of Civil Code §§ 1798.81.5 and 1798.82 also constitute unlawful acts or practices under the UCL, which affords the Court discretion to enter whatever orders may be necessary to prevent future unlawful acts or practices.

47. Plaintiff accordingly requests that the Court enter an injunction requiring Defendant to implement and maintain reasonable security procedures, including, but not limited to: (1) ordering that Defendant utilize strong industry standard encryption algorithms for encryption keys that provide access to stored customer data; (2) ordering that Defendant implement the use of its encryption keys in accordance with industry standards; (3) ordering that Defendant, consistent with industry standard practices, engage third party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis; (4) ordering that Defendant engage third party security auditors and internal personnel, consistent with industry standard practices, to run automated security monitoring; (5)

ordering that Defendant audit, test and train its security personnel regarding any new or modified procedures; (6) ordering that Defendant, consistent with industry standard practices, segment consumer data by, among other things, creating firewalls and access controls so that if one area of Defendant is compromised, hackers cannot gain access to other portions of Defendant's systems; (7) ordering that Defendant purge, delete, and destroy in a reasonable secure manner customer data not necessary for its provisions of services; (8); ordering that Defendant, consistent with industry standard practices, conduct regular database scanning and security checks; (9) ordering that Defendant, consistent with industry standard practices, evaluate web applications for vulnerabilities to prevent web application threats to consumers who purchase Defendant's food through the internet; (10) ordering that Defendant, consistent with industry standard practices, periodically conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and (11) ordering Defendant to meaningfully educate its customers about the threats they face as a result of the loss of their personal information to third parties, as well as the steps Defendant's customers must take to protect themselves.

48.  Plaintiff further requests that the Court require Defendant to identify and notify all members of the Class who have not yet been informed of the data breach, and to notify affected customers of any future data breaches by email within 24 hours of Defendant's discovery of a breach or possible breach and by mail within 72 hours.

## COUNT THREE

## VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW, CAL. BUS. & PROF. CODE §§ 17200 *ET SEQ.*

**(By the California Subclass)**

49.  Plaintiff restates the allegations above as if fully set forth herein.

50.  The UCL prohibits any "unlawful, unfair or fraudulent business act or practice," Cal. Bus. & Prof. Code § 17200.

51.  The acts alleged herein are "unlawful" under the UCL in that they violate at least the following laws:

      a.      The Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.*;

      b.      The California Customer Reporting Act, Cal. Civ. Code §§ 1798.81 *et seq.*

52. The acts alleged herein are "unfair" under the UCL because Defendant, by engaging in the conduct, failed to comport with a reasonable standard of care and public policy as reflected in statutes such as the Information Practices Act of 1977 and the California Customer Records Act, and thereby undermined or violated the stated policies underlying those acts.

53. As a direct and proximate result of Defendant's unlawful and unfair business practices as alleged herein, Plaintiff and members of the California Subclass have suffered injury in fact. Plaintiff and the California Subclass have been injured in that their personal information has been compromised and they are at an increased risk for future identity theft and fraudulent activity on their financial accounts. California Subclass members have also lost money and property by purchasing credit monitoring services they would not otherwise had to but for Anthem's unlawful and unfair conduct.

54. As a direct and proximate result of Defendant's unlawful and unfair business practices as alleged herein, Plaintiff and California Subclass members face an increased risk of identity theft and medical fraud, based on the theft and disclosure of their personal information.

55. Because of Defendant's unfair and unlawful business practices, Plaintiff and the California Subclass are entitled to relief, including restitution to Plaintiff and California Subclass members for costs incurred associated with the data breach and disgorgement of all profits accruing to Defendant because of its unlawful and unfair business practices, declaratory relief, and a permanent injunction enjoining Defendant from its unlawful and unfair practices.

56. The injunctive relief that Plaintiff and members of the California Subclass are entitled to includes, but is not limited to: (1) ordering that Defendant, consistent with industry standard practices, engage third party security auditors/penetration testers as well as internal

security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis; (2) ordering that Defendant engage third party security auditors and internal personnel, consistent with industry standard practices, to run automated security monitoring; (3) ordering that Defendant audit, test, and train its security personnel regarding any new or modified procedures; (4) ordering that Defendant, consistent with industry standard practices, conduct regular database scanning and securing checks; (5) ordering that Defendant, consistent with industry standard practices, periodically conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; (6) ordering Defendant to meaningfully educate its former and current members and employees about the threats they face as a result of the loss of their personal information to third parties, as well as the steps they must take to protect themselves; and (7) ordering Defendant to encrypt sensitive personal information.

57. Plaintiff, individually and on behalf of the members of the California Subclass, also seeks reasonable attorneys' fees and costs under applicable law including Federal Rule of Civil Procedure 23 and California Code of Civil Procedure § 1021.5.

## **PRAYER FOR RELIEF**

58. Wherefore, Plaintiff, individually and on behalf of the Class and Subclass, respectfully requests the following relief against Defendant Equifax:

    a. An award of actual damages against Defendant;

    b. An award of statutory damages against Defendant pursuant to 15 U.S.C. § 1681n(a)(1);

    c. An award of punitive damages against Defendant as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2);

    d. An award of the costs of the litigation and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) and 1681(o)(1), pursuant to Cal. Code Civ. P. § 1021.5, or as otherwise available; and

    e. Any other relief the Court deems just and proper.

## JURY DEMAND

59. Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: September 11, 2017   /s/ Jack Fitzgerald
JACK FITZGERALD
*jack@jackfitzgeraldlaw.com*
TREVOR M. FLYNN
*trevor@jackfitzgeraldlaw.com*
MELANIE PERSINGER
*melanie@jackfitzgeraldlaw.com*
THE LAW OFFICE OF JACK FITZGERALD, PC
Hillcrest Professional Building
3636 Fourth Avenue, Suite 202
San Diego, California 92103
Phone: (619) 692-3840
Fax: (619) 362-9555

ANDREW SACKS
*asacks@sackslaw.com*
JOHN WESTON
*jweston@sackslaw.com*
SACKS WESTON DIAMOND, LLC
1845 Walnut Street, Suite 1600
Philadelphia, Pennsylvania 19103
Phone: (215) 764-3008
*Pro Hac Vice Application to Be Submitted*

MARC E. DANN
BRIAN D FLICK
*notices@dannlaw.com*
DANNLAW
P.O. Box 6031040
Cleveland, Ohio  44103
Phone: (216) 373-0539
Fax: (216) 373-0536
*Pro Hac Vice Application to Be Submitted*

|   |   |
|---|---|
| 1 | THOMAS A. ZIMMERMAN, JR. |
| 2 | *tom@attorneyzim.com* |
|   | ZIMMERMAN LAW OFFICES, P.C. |
| 3 | 77 W. Washington Street, Suite 1220 |
| 4 | Chicago, Illinois 60602 |
|   | Phone: (312) 440-0020 |
| 5 | Fax: (312) 440-4180 |
| 6 | *Pro Hac Vice Application to Be Submitted* |

ROBERT A. CLIFFORD
*rac@cliffordlaw.com*
SHANNON M. MCNULTY
*smm@cliffordlaw.com*
CLIFFORD LAW OFFICES, P.C.
120 N. LaSalle Street, Suite 3100
Chicago, Illinois 60602
Phone: (312) 899-9090
Fax: (312) 899-9090
*Pro Hac Vice Application to Be Submitted*

DAVID H. KRIEGER
HAINES & KRIEGER, LLC
8985 S. Eastern Avenue, Suite 350
Henderson, Nevada 89123
Phone: (702) 880-5554
Fax: (702) 385-5518
*dkrieger@hainesandkrieger.com*
*Pro Hac Vice Application to Be Submitted*

MATTHEW I. KNEPPER
*matthew.knepper@knepperclark.com*
MILES N. CLARK
*miles.clark@knepperclark.com*
KNEPPER & CLARK LLC
10040 W. Cheyenne Ave., Suite 170-109
Las Vegas, Nevada 89129
Phone: (702) 825-6060
Fax: (702) 447-8048
*Pro Hac Vice Application to Be Submitted*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SEAN N. PAYNE
*seanpayne@spaynelaw.com*
PAYNE LAW FIRM LLC
9550 S. Eastern Ave. Suite 253-A213
Las Vegas, Nevada 89123
Phone: (702) 952-2733
Fax: (702) 462-7227
*Pro Hac Vice Application to Be Submitted*

**Counsel for Plaintiff and the Class**